# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| **Kevin Cervenka, individually and on behalf of all others similarly situated,**<br><br>*Plaintiff,*<br><br>v.<br><br>**Jumpp Logistics, LLC and Couch Goat Quandary, LLC,**<br><br>*Defendants.* | **COLLECTIVE ACTION**<br>**COMPLAINT** |

Kevin Cervenka ("Plaintiff"), individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b), files this Complaint against Jumpp Logistics, LLC ("Jumpp") and Couch Goat Quandary, LLC ("Couch Goat") (collectively, "Defendants") to recover unpaid overtime compensation, liquidated damages, attorneys' fees, and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended ("FLSA").

## I. NATURE OF SUIT

1. This is a collective action brought by Plaintiff on behalf of himself and all others similarly situated under 29 U.S.C. § 216(b) pursuant to the FLSA. *See* 29 U.S.C. §§ 201-219. Plaintiff and the putative collective members ("Collective Members") are all individuals who are or were employed by Defendants as couriers in Texas. However, Plaintiff and the Collective Members were all misclassified by Defendants as independent contractors, instead of non-exempt

1

employees, and were not paid overtime compensation for hours worked over forty (40) within a single workweek.

2. Congress passed the Fair Labor Standards Act in 1938 in an attempt to eliminate low wages, long hours, and provide American workers with a wage that would support a minimum standard of living. The FLSA seeks to achieve these goals by providing a minimum wage, prohibiting more than forty (40) hours of work in a single workweek without the payment of a premium or "overtime" rate, as well as asserting other protections for employees. The FLSA does not prohibit overtime, but rather, by imposing a premium rate for overtime hours worked, the FLSA discourages working employees for longer than forty (40) hours in a single workweek. *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 577-78 (1942).

3. Section 207 of the FLSA requires that an employer compensate their employees at a rate not less than one and one-half times their regular rate for any hours worked in a single workweek in excess of forty (40) hours. *See* 29 U.S.C. § 207(a). "An employer who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation." *Lopez v. Reliable Clean-Up & Support Servs., LLC*, Civil Action No. 3:16-CV-2595-D, 2018 U.S. Dist. LEXIS 126387, at *43 (N.D. Tex. July 27, 2018) (Fitzwater, J.) (citing *Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F.Supp.2d 635, 663 (S.D. Tex. 2013)) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981))).

4. To avoid paying employees a premium rate for hours worked over forty (40) in a single workweek, employers will pay their employees under a piece-rate compensation structure— i.e., compensation which depends on the number of "pieces" (or tasks) the individual completes.

*See White v. Integrated Elec. Techs., Inc.*, 2013 U.S. Dist. LEXIS 83298, *6, n. 6 (E.D. La. 2013). The FLSA allows employers to use a piece-rate compensation structure to pay their employees under certain circumstances. *See* 29 U.S.C. § 207(g). However, employers may not pay their employees pursuant to a piece-rate compensation system when their sole purpose is to avoid paying employees the Federal minimum wage, overtime, or both. *See White v. Integrated Elec. Techs., Inc.*, 2013 U.S. Dist. at *6, n. 6; *see also* 29 C.F.R. §§ 778.111, 778.318.

5. In using a piece-rate compensation system, the FLSA regulations outline two different methods in which overtime compensation can be properly calculated: (1) "the pieceworker [or the employee] is entitled to be paid, in addition to the total weekly earnings at this regular rate for all hours worked, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week;"[1] or (2) the employee "may agree with his employer in advance of the performance of the work that he shall be paid at a rate not less than one and one-half times this piece rate for each piece produced during the overtime hours." [2] *See McCann v. Superior Home Health of San Antonio*, 2017 U.S. Dist. LEXIS 227814, *6 (W.D. Tex. 2017) (*citing* 29 C.F.R. §§ 778.111, 778.418).

6. In this case, Defendants' piece-rate compensation policy did not comply with either method outlined in the FLSA regulations. *See* 29 C.F.R. §§ 778.111, 778.418. Instead, Plaintiff and

---

[1] For example, under the first method "if the employee has worked 50 hours and has earned $ 491.00 at piece rates for 46 hours of productive work and in addition has been compensated at $ 8.00 an hour for 4 hours of waiting time, the total compensation, $ 523.00, must be divided by the total hours of work, 50, to arrive at the regular hourly rate of pay—$ 10.46. For the 10 hours of overtime the employee is entitled to additional compensation of $ 52.30 (10 hours at $ 5.23). For the week's work the employee is thus entitled to a total of $ 575.30 (which is equivalent to 40 hours at $ 10.46 plus 10 overtime hours at $ 15.69)." 29 C.F.R. § 778.111(a).

[2] Under the second method, no additional overtime is owed if all general conditions outlined in § 778.417 are met. *See* 29 C.F.R. § 778.418.

3

the Collective Members were not paid any premium rate for hours worked over forty (40) in a single workweek, and they were not paid (and there was no agreement to be paid) a premium rate for each delivery made after working forty (40) hours in a single workweek.

7. Additionally, Defendants will contend that the couriers are not employees, but instead independent contractors in order to avoid paying a premium rate for hours worked over forty (40) in a single workweek. However, the proper classification of an individual as an employee is a legal determination. To determine whether an individual is an employee, courts look at the *Silk*[3] factors, also known as the "economics reality test"—a non-exhaustive five-factor test including, "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (citing *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (citing *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998))).

8. Here, the *Silk* factors are not satisfied and therefore Plaintiff and the Collective Members were improperly classified as independent contractors. Plaintiff and the Collective Members (1) were (and are) under the complete direction of Defendants throughout their employment as couriers; (2) Defendants investment or risk capital is much greater than that of Plaintiff and Collective Members; (3) Plaintiff and Collective Members did not have the ability to make decisions that would affect their profit or loss; (4) Plaintiff and the Collective Members

---

[3] See generally, *United States v. Silk*, 331 U.S. 704 (1947).

employment as couriers only required routine, common work which was shared amongst all couriers; and (5) Plaintiff and the Collective Members were not employed by Defendants on a "project-by-project bases."

9. Defendants in essence stood idly by as Plaintiff and the Collective Members were regularly overworked and underpaid. By misclassifying Plaintiff and the Collective Members as independent contractors and paying them pursuant to a piece-rate compensation structure, Defendants attempted to circumvent the FLSA overtime requirements. As a result of Defendants misclassification scheme and piece-rate compensation system, Plaintiff and the Collective Members did not receive overtime compensation for any hours worked in excess of forty (40) hours as required by the FLSA.

10. Due to Defendants' improper classification of Plaintiff and the Collective Members as independent contractors and Defendants' failure to pay Plaintiff and Collective Members a premium rate in accordance with the FLSA, Plaintiff and the Collective Members are owed the difference between their piece-rate compensation and properly calculated piece-rate overtime for all hours worked over forty (40) in a single workweek pursuant to 29 C.F.R. § 778.111(a).

11. Defendants knowingly and deliberately misclassified Plaintiff and the Collective Members as independent contractors. Additionally, Defendants knowingly and deliberately withheld Plaintiff's and the Collective Members' owed compensation at a premium rate for all hours worked in excess of forty (40) hours in a single workweek.

12. Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this action as a

5

collective action to recover unpaid wages, liquidated damages, attorneys' fees, costs, and all other damages provided for under § 216(b) of the FLSA.

## II.   PARTIES

13. Plaintiff realleges and incorporates all allegations in the preceding paragraphs.

14. Plaintiff, Kevin Cervenka, is an individual and resident of Texas. Plaintiff was employed by Defendants as a courier within the three-year period preceding the filing of this lawsuit. At all relevant times mentioned, Plaintiff was an "employee" of Defendants as defined by the FLSA. Plaintiff has consented to be a party-plaintiff to this action as indicated by the notice of consent that will be filed with the Court.

15. The putative Collective Members ("Collective Members") are all individuals who worked for Defendants as couriers in Texas, were classified as independent contractors, and compensated via a piece-rate compensation structure within the three-year period preceding the filing of this lawsuit. The Collective Members will "opt-in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. *See* 29 U.S.C. § 216(b).[4]

16. At all times hereinafter mentioned, Plaintiff and Collective Members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206, 207.

17. Defendant Jumpp Logistics, LLC ("Jumpp") is a Texas limited liability company. Defendant Jumpp operates a courier and logistics company based in North Texas. Defendant Jumpp can be served with process by serving its registered agent, Andrew D. Hawkins, at 11910 Greenville Avenue, Suite 220, Dallas, Texas 75243.

---

[4] "Collective Members" include all individuals who file a consent to join this lawsuit.

6

18. Defendant Couch Goat Quandary, LLC ("Couch Goat") is a Texas limited liability company. Defendant Couch Goat operates a courier and logistics company based in North Texas. Defendant Couch Goat can be served with process by serving its registered agent, Andrew D. Hawkins, at 11910 Greenville Avenue, Suite 220, Dallas, Texas 75243.

### III. JURISDICTION AND VENUE

19. Plaintiff realleges and incorporates all allegations in the preceding paragraphs.

20. This Court has subject-matter jurisdiction over this matter, which arises primarily under federal law. Specifically, this Complaint asserts claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* Therefore, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

21. This Court has personal jurisdiction over Defendants because Defendants are each doing business in Texas. Furthermore, Defendants each employ Texas residents, including Plaintiff and Collective Members, to work as couriers within the state of Texas.

22. Venue is proper in the Eastern District of Texas under 28 U.S.C. § 1391 because at least one Defendant is deemed to reside in the Eastern District of Texas, Sherman Division.

### IV. FLSA COVERAGE

23. At all relevant times, Defendants have, individually and jointly, been an "employer" of Plaintiff and Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24. At all relevant times, Defendants have, individually and jointly, acted, directly or indirectly, in the interest of an "employer" with respect to Plaintiff and Collective Members.

25. At all relevant times, Defendants have been an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r), in that Defendants have been, through common control and business scheme, engaged in the performance of related activities for a common business purpose—namely, delivering hot, fresh cookies from store front to the customer's delivery location via Plaintiff and Collective Members.

26. At all relevant times, Defendants have been an "enterprise" engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level, which are separately stated).

27. At all relevant times, Plaintiff and Collective Members were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) of Defendants who were all engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207. *See Reich v. Circle C. Investments, Inc.*, 998 F.2d 324 (5th Cir. 1993). Specifically, as part of their employment, Plaintiff and Collective Members are (or were) non-exempt employees who worked to transport goods (i.e., hot, fresh cookies) in interstate commerce for Defendants. In addition, Plaintiff and Collective Members have handled materials and goods that have been moved or produced in interstate commerce, which Defendants purchased or used in their business operation.

## V.     JOINT EMPLOYERS

28. Each Defendant was (and is) an individual employer of Plaintiff and the Collective Members.

29. Defendant Jumpp is a courier and logistics company, providing its services to multiple industries across the state of Texas. In this case, Defendant Jumpp works side-by-side with Tiff's Treats (a bakery and cookie delivery service) to provide unlimited hot and fresh cookie deliveries from a Tiff's Treats' store front location to its' customer's addresses. Defendant Jumpp directly controls and monitors Plaintiff and Collective Members while delivering hot, fresh cookies to the doorstep of Tiff's Treats' customers. Specifically, Defendant Jumpp uses software that enables them to "dispatch" their couriers (i.e., Plaintiff and Collective Members) to a particular Tiff's Treats store front location in order to complete a hot and fresh cookie delivery for Tiff's Treats.

30. Defendant Couch Goat, on information and belief, is a subsidiary of Defendant Jumpp and intermittently provides its courier services (i.e., cookie deliveries) for Tiff's Treats.

## VI.     FACTUAL ALLEGATIONS

31. Plaintiff realleges and incorporates all allegations in the preceding paragraphs.

32. From approximately February of 2020 to February of 2021, Plaintiff Kevin Cervenka worked as a courier for Defendants. Plaintiff Cervenka was recruited by Defendants to make cookie deliveries for Tiff's Treats, pursuant to Tiff's Treats' business demands and needs.

33. The putative Collective Members are current or former couriers who have been recruited by Defendants to make cookie deliveries for Tiff's Treats, pursuant to Tiff's Treats' business demands and needs.

34. Defendants uniformly classified Plaintiff and Collective Members as independent contractors and paid each individual pursuant to a piece-rate compensation structure—i.e., on a per delivery basis, in which they would receive a percentage of the delivery fee.

35. While Plaintiff and Collective Members were (and are) supposedly independent contractors, they made deliveries on behalf of Defendants from Tiff's Treats' various store front locations to their customers. Defendants dictated the manner in which Plaintiff and Collective Members performed these deliveries, consistent with Defendants' business interests, standards, and regulations. Plaintiff's and Collective Members' courier services were (and are) fully integrated into Tiff's Treats' cookie delivery business.

36. Pursuant to Defendants' schedules and business needs, Plaintiff and Collective Members worked between forty (40) and fifty (50) hours a week and would even work as many as sixty (60) hours in a single workweek. Plaintiff and Collective Members were "dispatched" by Defendants to a specific Tiff's Treats location to pick up and deliver a particular order. In order to satisfy Defendants' business demands, Plaintiff and Collective Members worked additional hours in excess of their typical schedules. As discussed further below, Plaintiff's and Collective Members' deliveries (and thus, wages) were made at the discretion of Defendants, and Plaintiff and Collective Members were required to follow Defendants' policies and procedures, such as their "driver policy" and "uniform policy." Plaintiff and Collective Members were paid pursuant to a piece-rate compensation system (i.e., approximately fifty-five percent (55%) of each delivery fee)[5] and were not paid any overtime premium for hours worked in excess of forty (40) hours.

---

[5] For example, if Defendants' delivery fee was $19.00, Plaintiff was paid 55% of the fee (or $10.5450)—an amount that was set and determined by Defendants.

37. For example, if Plaintiff made sixty (60) deliveries for Defendants in a single workweek, he was paid only the piece-rate from each delivery (fifty-five percent (55%) of the delivery fee), regardless of whether it took him a total of forty (40) hours to complete all assigned deliveries or fifty (50) hours to complete all assigned deliveries.

38. In other words, Plaintiff was not paid time and one-half his regular rate for time spent working over forty (40) hours in a workweek.

39. Defendant Jumpp is a North Texas based limited liability company which provides courier and logistics services across multiples states, including Texas, Oklahoma, Ohio, Michigan, Illinois, Iowa, Missouri, Kansas, Georgia, Kentucky, North Carolina, Tennessee, Florida, Pennsylvania, and Colorado. Defendant Jumpp provides courier and logistics services for multiple industries, such as food and beverage, commercial and industrial, medical, and additional professional industries. Defendant Jumpp additionally offers a "private client service" to provide interested clients with unlimited delivery services to and from the client's address (i.e., similar to a personal concierge service).[6]

40. The delivery of various products (e.g., hot, fresh cookies) is a critical and integral part of Defendant Jumpp's courier and logistics business. As such, Defendant Jumpp directly controls and monitors Plaintiff and Collective Members throughout their day-to-day activities as couriers. Specifically, Defendant Jumpp uses software that enables them to "dispatch" their couriers (i.e., Plaintiff and Collective Members) to a particular Tiff's Treats store front location in order to complete a hot and fresh cookie delivery. Defendant Jumpp uses its judgment and

---

[6] *See generally*, Jumpp Logistics, LLC, https://jumpplogistics.com/ (last visited, Sep. 9, 2021)

discretion in deciding which order to give each courier and subsequently, decides the amount of compensation that each individual courier will earn.

41.     Defendant Jumpp maintains its corporate headquarters in Lewisville, Texas.

42.     On information and belief, Defendant Couch Goat is a subsidiary of Defendant Jumpp and provides courier and logistics services. Defendant Couch Goat maintains a physical office location in Denton, Texas. Defendant Couch Goat compensated Plaintiff and Collective Members for their courier services in September of 2020 and issued a 2020 1099 tax form to Plaintiff and Collective Members.

43.     Plaintiff and the Collective Members that were (and are) recruited by Defendants to deliver cookies for Tiff's Treats would have to report to the store front of their first assigned Tiff's Treats delivery at the time their shift was scheduled to begin. Throughout the rest of their scheduled shift, Defendants would dispatch Plaintiff and Collective Members to various Tiff's Treats locations as Tiff's Treats would receive "out-of-zone" deliveries.

44.     On information and belief, Tiff's Treats collects their customers' orders and uses the information requested (i.e., delivery address) at the time the order is placed to fulfill their order at the nearest Tiff's Treats location. Tiff's Treats then provides this information (order and delivery address) directly to Defendants in order to dispatch, or prepare to dispatch, a courier.

45.     Moreover, on information and belief, Defendants continue to monitor each delivery until the courier reaches the order's destination, and further ensure that Plaintiff and Collective Members are following Defendants' delivery policy (i.e., call before or upon arrival at destination, knocking and walking away, wait at least one minute to confirm that someone retrieves the order).

46. Additionally, Defendants' dispatchers and other agents directly provided instructions to Plaintiff and Collective Members in order to further Defendants' business interests and promote compliance with its policies. For example, if Plaintiff or Collective Members were sent on a delivery without the complete order, Defendants would direct Plaintiff and Collective Members to turn around and retrieve the rest of the order. Additionally, Plaintiff and Collective Members were instructed to follow Defendants' uniform policy (i.e., Plaintiff and Collective Members were to wear polo shirts with Defendants' logo, or to wear a plain blue polo shirt with black or khaki shorts or pants), as well as their smoking policy (i.e., Plaintiff and Collective Members were not to smoke when products were in their vehicle).

47. If Defendants received any customer complaints or noticed any couriers who were not following the outlined policies and procedures, Defendants would send out a text message to all couriers regarding the "compliance issues." In contrast, if couriers (including, Plaintiff and Collective Members) experienced any issues while completing a delivery for Defendants, Defendant Jumpp provided a Support Hotline to assist their couriers.

48. The work of Plaintiff and Collective Members primarily consisted of picking up custom-made, warm cookies from Tiff's Treats store front locations (which included time spent waiting for orders to be completed), drive (using their personal vehicles) the custom-made order to the location specified by Tiff's Treats' customer (pursuant to the delivery policy), and then report to the next Tiff's Treats location as assigned by Defendants to pick up their next order.

49. Moreover, Plaintiff and Collective Members are encouraged by Defendants to work long hours and maintain a consistent schedule. For example, Defendants frequently requested (and request) Plaintiff and Collective Members to work a particular day with specific, set hours in order

to ensure that there were available couriers to meet the demands of Defendants' business needs. Furthermore, Defendants requested (and request) that Plaintiff and Collective Members submit their schedules ahead of time in order for Defendants to then create a final schedule for all of Defendants' couriers.

50. Plaintiff and Collective Members conduct their day-to-day activities within designed parameters and in accordance with pre-determined operational plans coordinated by Defendants. Plaintiff and Collective Members' daily and weekly activities are routine and largely governed by standardized plans, policies, and procedures created by Defendants.

51. Virtually every job function is determined at Defendants' discretion, including the work schedule, deliveries to be completed, and other related work duties.

52. Plaintiff's and Collective Members' duties did not include managerial responsibilities or the exercise of independent discretion or judgment.

53. Plaintiff and Collective Members are not customarily engaged in an independently established trade, occupation, profession, or business of the same nature as the services they provide to Defendants.

54. Defendants hired Plaintiff and Collective Members to work as couriers during the three-year period preceding the filing of this lawsuit. Plaintiff and Collective Members regularly worked as couriers over forty (40) hours in a single workweek without being compensated at a premium rate. Based on the total number of hours Plaintiff and Collective Members were requested and required by Defendants to work, there was little, or no time left for Plaintiff and Collective Members to make deliveries for any other company besides Defendants. As a result, Plaintiff and Collective Members were (and are) economically dependent on Defendants.

55. Defendants' misclassification of Plaintiff and Collective Members as independent contractors and failure to compensate Plaintiff and Collective Members at a premium rate for hours worked over forty (40) in a single workweek amount to violations of the FLSA. Furthermore, these violations were not based on good-faith and a reasonable belief that their conduct complied with the FLSA. Therefore, an award of liquidated damages is mandatory.

56. Additionally, because Defendants' method of paying Plaintiff and Collective Members in violation of the FLSA was willful and was not based on good-faith and reasonable belief that its conduct complied with the FLSA, a three-year statute of limitations applies due to the willful nature of the violations. 29 U.S.C. § 255(a).

## VII. COLLECTIVE ACTION ALLEGATIONS

57. The foregoing paragraphs are fully incorporated herein.

58. Plaintiff brings this FLSA claim as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) (the "Collective Action"). In addition to the claims of Plaintiff Cervenka, Plaintiff also brings this action as a representative of all similarly situated former and current couriers of Defendants. The proposed collective of similarly situated individuals (i.e., the Collective Members) sought to be certified pursuant to 29 US.C. § 216(b), is defined as:

> **All individuals who worked for Defendants as couriers in Texas, were classified as independent contractors, and compensated via a piece-rate compensation structure within the three-year period preceding the filing of this lawsuit.**

59. FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

60. Other individuals have been victimized by Defendants' common pattern, practice, and scheme of failing to pay its couriers overtime compensation. Plaintiff is aware of other couriers who were paid in the same unlawful manner as Plaintiff. Plaintiff is also aware that the illegal practice or policies of Defendants have been uniformly imposed on other couriers who worked (or work) for Defendants. Specifically, Plaintiff is aware of other couriers who were also misclassified as independent contractors and were paid pursuant to the same piece-rate compensation scheme, resulting in no premium rate for any hours over forty (40) worked in a single workweek.

61. Plaintiff and Collective Members all have the same pay structure, have similar job duties, and were required to adhere to the same policies and procedures as implemented by Defendants. Plaintiff and Collective Members are all victims of Defendants' unlawful practices.

62. Plaintiff and the Collective Members are all non-exempt for purposes of overtime pay under the FLSA.

63. Defendant's failure to pay overtime compensation pursuant to the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Collective Members. Plaintiff's experience regarding pay is typical of the experiences of the Collective Members.

64. Although the exact amount of damages may vary among Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The Collective Members' claims arise from a common nucleus of facts. Specifically, Defendants' systematic course of wrongful conduct in violation of the FLSA's overtime wage requirements caused harm to Plaintiff and Collective Members.

### VIII. CAUSE OF ACTION NO. 1: FAILURE TO PAY OVERTIME WAGES PURSUANT TO THE FAIR LABOR STANDARDS ACT

65. The foregoing paragraphs are fully incorporated herein.

66. Plaintiff and Collective Members routinely worked in excess of forty (40) hours per workweek for Defendants as couriers.

67. During the relevant period, Defendants have violated and are violating the provisions of Section 7 of the FLSA, 29 U.S.C. § 207, 215(a)(2), by employing Plaintiff and Collective Members in an enterprise engaged in commerce or in the production of commerce within the meaning of the FLSA, as aforesaid, and failing to pay Plaintiff and Collective Members at a rate of not less than one-and-one-half times their calculated hourly regular rate (i.e., using their total compensation per week, including their piece-rate, bonuses, and all other forms of renumeration, divided by total number of hours worked per week) for every hour worked over forty (40) in each workweek.

68. Defendants' failure to pay Plaintiff and Collective Members the correct premium rate (under either method outlined in the FLSA regulations, *see* 29 C.F.R. §§ 778.111, 778.418) for any hours worked over forty (40) in a single work week is a violation of the FLSA's overtime compensation requirement. *See* 29 U.S.C. § 207, 215(a)(2); *see also* 29 C.F.R. §§ 778.111, 778.418.

69. In addition, to the extent Defendants intend to rely on an exemption or defense as provided for by the FLSA, none of the stated exemptions or defenses regulating the duty of employers to pay employees for all hours worked at the required overtime rate are applicable to Defendants, Plaintiff, or Collective Members.

70. Thus, because Plaintiff and Collective Members were not paid an overtime premium for hours worked over forty (40) in a single workweek pursuant to 29 U.S.C. § 207, and there are not any applicable exemptions or defenses, Plaintiff and Collective Members are owed the difference between their piece-rate compensation and properly calculated piece-rate overtime for all hours worked over forty (40) in a single workweek pursuant to 29 C.F.R. § 778.111(a).

71. Because there are other putative plaintiffs (i.e., the Collective Members) who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this lawsuit as a collective action under Section 216(b) of the FLSA to recover unpaid overtime compensation, liquidated damages, attorneys' fees, and costs on behalf of himself and the Collective Members.

## IX.   JURY DEMAND

72. Plaintiff requests a trial by jury.

## X.   DAMAGES SOUGHT

73. Plaintiff and Collective Members are entitled to recover compensation for every hour worked over forty (40) in a workweek, but for which Plaintiff and Collective Members were not paid at a rate of not less than one-and-one-half times their calculated hourly regular rate (i.e., total compensation per week divided by total number of hours worked per week), plus an equal amount as liquidated damages. The calculated hourly regular rate shall include all remuneration paid by Defendants. *See* 29 C.F.R. § 778.111.

74. Plaintiff and Collective Members are entitled to an amount equal to all unpaid wages found due (including, uncompensated overtime wages) as liquidated damages because Defendants' actions were not based on good faith. *See* 29 U.S.C. § 216(b).

75. Additionally, the failure of Defendants to compensate Plaintiff and Collective Members for overtime work as required by the FLSA was knowing, willful, intentional, and done in bad faith. Thus, Plaintiff and Collective Members are entitled to recover damages for the past three (3) years. *See* 29 U.S.C. § 255(a).

76. Plaintiff and Collective Members are entitled to recover attorneys' fees and costs as required by the FLSA. 29 U.S.C. § 216(b).

\*   \*   \*

### XI.  PRAYER

77. For the foregoing reasons, Plaintiff and Collective Members pray for judgement against Defendants, jointly and severally, as follows:

   A. For an order pursuant to Section 216(b) of the FLSA finding Defendants liable for unpaid wages due to Plaintiff (and those who may join in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those who may join in the suit);

   B. For an order awarding Plaintiff (and those who may join in the suit) an amount of pre-judgment interest, as may be appropriate, and post-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

   C. For an order awarding Plaintiff (and those who may join in the suit) all attorneys' fees incurred;

   D. For an order awarding Plaintiff (and those who may join in the suit) the costs and expenses incurred in pursuing this action; and

   E. For an order granting any such other and further relief as this Court deems just and appropriate.

Respectfully submitted,


By: */s/ Drew N. Herrmann*
    Drew N. Herrmann
    Texas Bar No. 24086523
    *drew@herrmannlaw.com*
    Pamela G. Herrmann
    Texas Bar No. 24104030
    *pamela@herrmannlaw.com*

    **HERRMANN LAW, PLLC**
    801 Cherry Street, Suite 2365
    Fort Worth, Texas 76102
    Telephone: 817-479-9229
    Fax: 817-840-5102

    ATTORNEYS FOR PLAINTIFF
    AND COLLECTIVE MEMBERS