IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PLANO DIVISION

| | |
|---|---|
| **KEVIN CERVENKA**<br><br>*Plaintiffs,*<br><br>**v.**<br><br>**JUMPP LOGISTICS, LLC, ET AL.**<br><br>*Defendants.* | **No.  4:21-cv-00813-SDJ**<br><br><br>**PLAINTIFF'S MOTION FOR<br>COURT-AUTHORIZED NOTICE[1]** |

## I.   INTRODUCTION

Plaintiff, Kevin Cervenka alleges that Jumpp Logistics, LLC and Couch Goat Quandary, LLC (collectively, "Defendants" or "Jumpp"), violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended ("FLSA") by failing to pay Plaintiffs[2] and other similarly situated workers ("Potential Class Members"), overtime wages as required by the FLSA for any hours worked in excess of forty (40) hours in a single workweek. *See* 29 U.S.C. § 207(a).

Defendants are engaged in the business of providing "reliable, secure [delivery and courier services] with address verification, tracking and proof of delivery" to their customers in various industries. *See* Defs' Website, https://jumpplogistics.com/services/, (last accessed May 23, 2022). Defendants provide their customers with delivery services across the state of Texas through delivery drivers Defendants recruit and classify as independent contractors. *See* Defs' Answer, [Doc. 6 at p. 6 ¶ 20]. Indeed, the "delivery of various products through independent contractors

---

[1]    This Motion is being refiled to include a certificate of conference (added on page 13), but is otherwise the same Motion filed as Doc. 29.

[2]    In addition to the named Plaintiff, Cervenka there are two (2) opt-in plaintiffs who filed their consents to join this action prior to the filing of this Motion for Notice Under the Swales Standard. *See* [Doc. 25].

is a critical and integral part of Defendant[s][']. . .courier and logistics business." *See* Defs'
Answer, [Doc. 6 at p. 9 ¶ 40]; *see also* Pl's Ex. 2 at App. 040, (Jordan, Corp. Rep. Depo. 35:8-20).

Plaintiffs and Potential Class Members worked as delivery drivers for Defendants during
the relevant time period. *See* Defs' Answer, [Doc. 6 at p. 7 ¶ 32] (admitting and stating that
Plaintiff, Cervenka worked for Defendants as an independent contractor from approximately
February 2020 to February 2021), Defendants classified all their delivery drivers, including
Plaintiffs and putative opt-in plaintiffs, as independent contractors.

Plaintiffs and putative opt-in plaintiffs were paid a set piece-rate for each delivery,
regardless of the hours worked and the time spent performing deliveries as instructed and directed
by Defendants for their customers. *See* Defs' Answer, [Doc. 6 at p. 7 ¶ 34] (admitting, that delivery
drivers classified as independent contractors are paid "pursuant to a schedule akin to piece-rate
compensation structure—i.e., on a per delivery basis, in which they would receive a percentage of
the delivery fee."). As a result, Plaintiffs and putative opt-in plaintiffs were not paid time-and-a-
half for any hours worked over forty (40) in each workweek.

Defendants uniformly classified all delivery drivers, including Plaintiffs as independent
contractors and paid each individual pursuant to a piece-rate compensation structure—i.e., on a
per delivery basis, in which they would receive a percentage of the delivery fee. Plaintiffs therefore
seeks to certify a collective under 29 U.S.C. § 216(b) and send court-authorized notice to similarly
situated workers ("potential opt-in plaintiffs") defined as:

> **All individuals who worked for Defendants as delivery drivers in Texas, were
> classified as independent contractors, and compensated via a piece-rate compensation
> structure within the three-year period preceding the filing of this lawsuit.**

As set forth below, the facts alleged in Plaintiffs' pleadings, along with the declarations and
documents submitted as evidence, show "sufficient similarity between the plaintiffs' employment

situations" and the employment situations of this group of workers. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 441 (5th Cir. 2021). Therefore, Plaintiff requests the Court order Defendants to promptly disclose contact information for the putative opt-in plaintiffs and authorize notice to the putative opt-in plaintiffs of their right to opt-in to this lawsuit.

## II. COLLECTIVE ACTIONS UNDER 216(B) AND REQUEST FOR NOTICE

"In 1938, Congress gave employees and their 'representatives' the right to bring actions to recover amounts due under the FLSA." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 173 (1989). However, "[i]n [] respon[se] to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome, the representative action by plaintiffs not themselves possessing claims was abolished, and the requirement that an employee file a written consent was added." *Id.* (citing 93 Cong. Rec. 538, 2182 (1947)). As a result, § 216(b) of the FLSA "allows an individual employee or group of employees to sue 'any employer . . . for and in behalf of himself or themselves and other employees similarly situated[,]' [but] [o]nly employees who provide express written consent to join the suit may join a class under the Act." *Edwards v. Univar USA, Inc.*, Civil Action No. 3:20-CV-00778-X, 2021 U.S. Dist. LEXIS 5403, at *2 (N.D. Tex. 2021). "This 'opt-in' approach separates class actions under [§ 216(b)] [of] the [FLSA] from those governed by the 'opt-out' method in Federal Rule of Civil Procedure 23." *Edwards*, at *2. *See also LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

"[C]ollective action allows. . .plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche*, 493 U.S. at 170 (stating that "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity"). These benefits however "depend on employees

receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* Moreover "[§] 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id.*, at 170.

As the district court noted in *Sperling v. Hoffmann-La Roche, Inc.*, "[i]f courts refrain from facilitating notice to missing class members, the enforcement of ADEA remedies for violations which victimize a group of people will be limited only to those victims who are already known to their 'champion,' (citing *Woods*, 686 F.2d at 581), or who are fortunate enough to hear and heed 'the vagaries of rumor and gossip,' (citing *Lusardi*, 99 F.R.D. at 93), or who are courageous enough to recognize the wrong done them and sue on their own." 118 F.R.D. 392, 403 (D.N.J. 1988).

## A. The *Swales* Standard for Notice in Collective Actions.

To proceed as a FLSA collective action, plaintiffs must be "similarly situated." 29 U.S.C. § 216(b). Traditionally, courts applied the *Lusardi* two-step approach, which involved a determination (at the first stage—the notice stage, before the parties engaged in discovery) to "conditionally certify" the proposed class for purposes of facilitating notice of the lawsuit to other similarly situated employees, and then (at the second stage—the decertification stage) it involved a determination as to whether the employees are sufficiently similar to proceed collectively. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021).

Recently, the Fifth Circuit rejected this two-stage approach, and stated that the court's purpose is to ensure that notice is sent to plaintiffs who are in fact similarly situated, a

4

determination that should be made at the onset of the collective action. *See Swales*, 985 F.3d at 434. The focus however is not on whether there has been an actual violation or whether Plaintiffs can meet their burden for summary judgment, but whether Plaintiffs and potential opt-in plaintiffs are similarly situated—such, that "facilitating notice is [] need[ed] for [the] 'efficient resolution in one proceeding of common issues'" of law and fact arising from the same alleged discriminatory activity. *See Hoffmann-La Roche*, 493 U.S. at 170, 172-173. This is exemplified under Rule 23—a more rigorous standard for certification that does not require the party seeking certification "to prove the merits of the class claim or even to establish a probability that the action will be successful." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016).

The Fifth Circuit, in *Swales*, further emphasized that, despite rejecting the *Lusardi* two-phase approach, district courts still retain "broad, litigation management discretion" in deciding whether a group of workers is sufficiently similarly situated to proceed collectively. *Swales*, 985 F.3d at 443. Under *Swales*, district courts now "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Powell v. One Source EHS, L.L.C.*, No. 20-161-SDD-RLB, 2021 U.S. Dist. LEXIS 176570, at *4 (M.D. La. Sep. 16, 2021) (citing *Swales*, 985 F.3d at 441). Once the necessary information is before it, the district court determines "whether the proposed collective is in fact 'similarly situated,' with an eye toward ensuring that the collective action does not 'devolve into a cacophony of individual actions.'" *Id.* (citing *Swales*, 985 F.3d at 441).

**B.** **Based on the pleadings and evidence Plaintiff has shown there are other potential opt-in plaintiffs who are similarly situated under the *Swales* standard.**

Under the *Swales* standard, notice to other potential opt-in plaintiffs of this collective action

is appropriate because the pleadings and evidence shows that Plaintiffs are similarly situated to the putative class of workers they seek to notify of this action. Specifically, Plaintiffs have sufficiently shown that all delivery drivers classified as independent contractors are subject to the same job requirements, job duties, and paid in the same manner, and therefore, are all similarly situated with regards to Defendants' policies and payment scheme at issue in this lawsuit. Therefore, Plaintiffs have met their burden under the *Swales* standard.

> **1.   Plaintiff and the potential opt-in plaintiffs experienced similar factual and employment settings.**

Courts (pre and post-*Swales*) typically consider the same types of employment characteristics and employment settings. *See Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246-JKP, 2021 U.S. Dist. LEXIS 101258, at *27-28 (W.D. Tex. May 28, 2021). In determining the similarly situated inquiry, courts review evidence of "job duties, geographic location, supervision, and salary," *Moresi v. Res. Energy Ventures & Constr. Co LLC*, No. 15-cv-02224, 2019 U.S. Dist. LEXIS 102237, at *6 (W.D. La. June 18, 2019) (citation omitted), "the employer's classification of the employees [and] the level of similarity in actual job performance," *id*. at *3 (citation omitted), and "plaintiffs' job title, plaintiffs' job duties, and the method in which plaintiffs were paid[.]" *Soto v. Marquez Constr. & Maint.*, No. MO:20-CV-00101-DC-RCG, 2021 U.S. Dist. LEXIS 171040, at *6 (W.D. Tex. Apr. 9, 2021).

Plaintiff and the other delivery drivers were all subjected and shared sufficiently similar employment terms and experience as delivery drivers. Defendants required Plaintiff and all their other delivery drivers to go through the same on-boarding process. *See* Pl's Ex. 1 at App. 004-5, (Knope Depo. 11:15-17, 15:15-20); *see also* Pl's Ex. 9 at App. 064, 067-71 (Dispatcher Communications). During the on-boarding process, Defendants required Plaintiff and their other

delivery drivers to sign the same "independent contractor" agreement. *See* Pls' Ex. 1 at App. 024, (Knope Depo. 90:16-91:13, 92:23-93:7); Pl's Ex. 5 at App. 052-53, (Depo. Ex. 7, Jumpp-IC Agreement); Pls' Ex. 1 at App. 024-25, (Knope Depo. 93:9-94:1); Pl's Ex. 6 at App. 054-55, (Depo. Ex. 8, Couch Goat-IC Agreement). After completing the on-boarding process and signing the "independent contractor" agreement, Defendants assign each new hire a driver number. *See* Pl's Ex. 9 at App. 067-71, (Dispatcher Communications); *see also* Pl's Ex. 10 at App. 074, (New Driver Procedure); Pls' Ex. 1 at App. 005, (Knope Depo. 15:15-20).

Plaintiff and the other deliver drivers have the same job duties and were required to follow the uniform policies and procedures laid out by Defendants. *See* Pl's Ex. 1 at App. 005, (Knope Depo. 15:23-25); *see also* Pl's Ex. 9 at App. 70, 072, (Dispatcher Communications); Pl's Ex. 10 at App. 075-77 (Driver Pay and Delivery Procedures). Indeed, Plaintiffs and the other delivery drivers were recruited by Defendants to fill the same position—delivery driver, advertised and marketed by Defendants. *See* Pl's Ex. 1 at App. 019, (Knope Depo. 73:18:25); *see also* Pl's Ex. 9 at App. 061-63, (Dispatcher Communications). The delivery driver job position described in each of Defendants' job postings, job advertisements, and marketing materials were the same in all material respects. See Pl's Ex. 8 at App. 057-60, (Postings and Advertisements); *see also* Pl's Ex. 9 at App. 061-63, (Dispatcher Communications). Each of Defendants' delivery driver job postings and advertisement materials identify the same job qualifications *See Id*. Job descriptions such as these are often considered by courts when determining whether employees are similarly situated. *See, e.g.*, *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 740 (W.D. Tex. 2018) (noting that Plaintiffs cited to "Defendants' single job description for all PCOs to show that PCOs possessed similar qualifications and were expected to perform comparable work").

Plaintiff and the other delivery drivers were all subject to similar job duties, job supervision, and job assignments. *See* Pl's Ex. 1 at App. 011, (Knope Depo. 40:9-10, 40:21-41:14); *see also* Pl's Ex. 9 at App. 70, 072, (Dispatcher Communications); Pl's Ex. 10 at App. 075-77 (Driver Pay and Delivery Procedures). Plaintiffs and the other delivery drivers received work instructions and assignments from the same dispatchers employed by Defendant, including "Larry Jordan," "John Centala," and "Brian Smeedy." *See* Pl's Ex. 9 at App. 066, (Dispatcher Communications). *See also* Pl's Ex. 1 at App. 012, (Knope Depo. 42:19-42:25, 43:10-11). The process for performing deliveries is the same for all delivery drivers. *See* Pl's Ex. 1 at App. 005, (Knope Depo., at 14:1-17:23). Plaintiffs and the other delivery drivers drove their own vehicle to perform deliveries (i.e., pick-up from Defendants' various customer locations and drop-off at the requested locations) for Defendants' customers as directed and instructed by Defendants. *See* Pls' Ex. 1 at App. 005, (Knope Depo. 15:23-25). Defendants use the same software dispatch system to track the driver, deliveries, and customer delivery routes. *See* Pl's Ex. 1 at App. 005, 012 (Knope Depo. 14:1-17:23, 41:12-14); s*ee also* Pl's Ex. 9 at App. 071, (Dispatcher Communications).

Plaintiff and the potential opt-in plaintiffs were all recruited to perform the same functions—provide delivery services for Defendants' customers. *See* Pls' Ex. 1 at App. 028, (Knope Depo. 179, 180:1-182:6). *See, e.g.*, *Segovia*, 2021 U.S. Dist. LEXIS 101258, at *27-28. Defendants classified all delivery drivers, including Plaintiffs and Potential Class Members as independent contractors. *See* Pl's Ex. 2 at App. 036-37, (Jordan Depo. 21:6-8, 22:22-25, 23:6-8). Plaintiff and the other delivery drivers were paid a set piece-rate for each delivery, regardless of the hours worked and the time spent performing deliveries as instructed and directed by

Defendants for their customers. *See* Pl's Ex. 1 at App. 013, (Knope Depo. 47:2-4).[3] Plaintiff and the other delivery drivers were paid pursuant the same compensation policy—a set piece rate for each delivery, *see* Pl's Ex. 1 at App. 015-16, (Knope Depo. 55:19-55:21, 60:17-21)[4] and determined in the same manner, based on the "rings of distance" set by Defendants. *See* Pl's Ex. 1 at App. 015-16, (Knope Depo. 55:3-5, 56:24-25, 60:17-21).

Plaintiff and potential opt-in plaintiffs received the same "driver settlement" report reflected orders picked up and delivered during a specific time period, and it included the compensation paid to the deliver drivers for the deliveries. *See* Pl's Ex. 1 at App. 025, (Knope Depo. 95:23-96:3); *see also* Pl's Ex. 7 at App. 056, (Depo. Ex. 9, Driver Settlement); Pl's Ex. 2 at App. 033, (Jordan Depo. 7:18-22). Defendants used the same "driver settlements" to pay Plaintiff and all their delivery drivers. *See* Pl's Ex. 1 at App. 026, (Knope Depo. 101:7-22); *see also* Pl's Ex. 7 at App. 056, (Depo. Ex. 9, Driver Settlement); Pl's Ex. 2 at App. 033, (Jordan Depo. 7:18-22).

### 2.   Defendants' sole defense—that Plaintiff and all the potential opt-in plaintiffs were independent contractors can be litigated collectively.

Defendants assert a single defense against Plaintiff and the potential opt-in plaintiffs—universally, claiming that the independent contractor defense applies to all delivery drivers during the relevant time period. *See* Pl's Ex. 2 at App.038, (Jordan Depo. 29:12-23). *See, e.g.*, *Snively*, 314 F. Supp. 3d at 741 (raising the same defense against all plaintiffs "lends support to the notion that Plaintiffs are similarly situated "and pointing out that "many of the specific fact questions cited by Defendants apply to each Plaintiff—i.e., Defendants raise the same defenses against most, if not

---

[3]      *See also* Pl's Ex. 9 at App. 061, (Dispatcher Communications) ("Paid by the delivery [] commission based. . .not paid hourly").

[4]      *See* Pl's Ex. 9 at App. 063, (Dispatcher Communications) ("We pay 55.5% commission on our delivery fee to the customer."); *see also* Pl's Ex. 4 at App. 00, (Depo. Ex. 5, Driver Commission-Pay (Jumpp 0011284)).

all, Plaintiffs"). In this case, Defendants' arguments supporting the independent contractor classification is more collective than individualized and will rely largely on common evidence and legal analysis. *See, e.g, Snively*, 314 F. Supp. 3d at 742 ("Although [a defense] may require specific factual inquiries about each Plaintiff," because Defendant asserts the same defenses against every Plaintiff, "collective treatment is less problematic."); *see also Badon v. Berry's Reliable Res., LLC*, No. 19-12317, 2021 U.S. Dist. LEXIS 45688, at *9 (E.D. La. Mar. 11, 2021) (finding workers to be similarly situated where Defendant's affirmative defense, that the workers were independent contractors, was asserted universally against each plaintiff and opt-in). Therefore, Plaintiff respectfully requests this Court to authorize notice to the putative opt-in plaintiffs.

### III.   PROPOSED NOTICE TO THE SIMILARLY SITUATED DELIVERY DRIVERS

Plaintiff requests Defendants be ordered to produce within fourteen (14) days of the granting of this Motion an Excel (.xls) file containing the names, all known addresses, all email addresses, all telephone numbers (home, mobile, etc.), and beginning and ending dates of their working relationship with Defendants. Telephone numbers will be used only for text message notice and to verify contact information for Class Members in the event that the initial notice is returned undeliverable. *See Joaquin v. Hinojosa*, 219 F. Supp. 3d 582, 587 (W.D. Tex. 2016)(ordering disclosure of phone numbers).

Plaintiff requests leave to send the Notice and Consent forms (*attached as* **Exhibit 11**) via first-class mail, and the proposed notice (*attached as* **Exhibit 12**) via email[5] and (**Exhibit 13**) via

---

[5]   "Courts have held that 'distribution via email is appropriate.'" *Eltayeb v. Deli Mgmt.*, 2021 U.S. Dist. LEXIS 3484, at *11 (E.D. Tex. Jan. 8, 2021)("email has become a necessary and routine means of communication.")(citing *Wingo v. Martin Transp., Inc.*, No. 2:18-cv-00141-JRG, 2018 U.S. Dist. LEXIS 205416, 2020 WL 6334312, at *9 (E.D. Tex. Dec. 5, 2018) (explaining the growing reliance on email as a source of communication)).

text message[6] to all identified class members. Plaintiff requests leave to maintain a website that is limited to posting the content of the approved Notice and Consent Form (*attached as* **Exhibit 11**).[7]

The methods of notice requested by Plaintiff are deemed appropriate and reasonable, where other methods of notice would be insufficient, such that an alternative proposed notice methods are necessary to ensure timely notice is effectuated. Courts also find text messaging to be an appropriate means of notice, particularly where there is evidence that text messaging is a form of communication previously used by the employer to communicate with its employees.[8]

Here, text message is a form of communication previously used by Defendants in communicating with its employees—potential class members. Plaintiff requests this Court to permit notice to be sent via text message with a link to the website where the proposed notice and consent form will be posted. *See Cervantez v. TDT Consulting, LLC,* 2019 U.S. Dist. LEXIS 142907, at *34 (N.D. Tex. July 22, 2019)(granting "request to distribute the Notice through mail,

---

[6]     "In the world of 2017, email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that [sic] using email and texts to notify potential class members is entirely appropriate." *Vega v. Point Security*., LLC, No. A-17-CV-049-LY, 2017 U.S. Dist. LEXIS 148105, at *12, 2017 WL 4023289, at *4 (W.D. Tex. 2017); *see also Eltayeb*, 2021 U.S. Dist. LEXIS 3484, at *12 (". . . .the current state of technology, text message notification is a proper means of effectuating notice to the potential plaintiffs.").

[7]     *See, e.g., Black v. SettlePou, P.C.*, 2011 WL 609884, at *6 (N.D. Tex. Feb. 14, 2011) (Kinkeade, J.) (Plaintiff's counsel "is authorized to maintain an internet website for the purpose of informing similarly situated persons of their right to opt into this litigation."); *Beall v. Tyler Techs., Inc.*, Civil Action No. 2:08–CV–422, 2009 WL 1766141, *3-4 (E.D. Tex. June 23, 2009) (permitted the posting of notice on a website, "to be maintained by the plaintiffs' counsel" in a FLSA collective action); *Florence*, 2019 U.S. Dist. LEXIS 4379, at *10-11 ("Plaintiff may maintain a website with an online portal that allows for the submission of electronically-signed consents."); *Sellers v. Sage Software, Inc.*, No. 1:17-CV-03614, 2018 U.S. Dist. LEXIS 188420, at *16 (N.D. Ga. May 25, 2018) (approving submission through online portal of electronically signed Consent forms, collecting cases within this district); *DePyper v. Roundy's Supermarkets, Inc.*, No. 20-cv-2317, 2020 U.S. Dist. LEXIS 208664, at *16 (N.D. Ill. Nov. 9, 2020) (e-mail notice to include a hyperlink as opposed to attaching PDF due to finding that PDF attachment may cause email to be flagged as spam).

[8]     *See Goss v. Tyler Traditions, Inc.*, No. 6:18-CV-423-JDK, 2019 U.S. Dist. LEXIS 175693, at *16-17 (E.D. Tex. July 22, 2019) (authorizing notice to be disseminated via text message) (citing *Kidwell v. Ruby IV, LLC*, No. 18-2052, 2019 U.S. Dist. LEXIS 7663, at *6 (E.D. La. Jan. 16, 2019)); *Butler*, 2017 U.S. Dist. LEXIS 218126, at *20 (citing *Bhumithanarn*, 2015 U.S. Dist. LEXIS 90616, 2015 WL 4240985, at *5 (allowing notice by text message where defendants use text messaging as a preferred method of employee communication)).

email, text message and granting [Plaintiff's] request that potential opt-in plaintiffs be afforded the opportunity to electronically sign their consent forms on the proposed website."). Plaintiff requests a sixty (60) day opt-in period from the initial date of transmitting the notice forms via mail, email, and text.

It is well-documented that people often disregard collective action notices. *See Andrew C. Brunsden, Hybrid Class Actions, Dual Certification, & Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 295 (2008). Courts routinely approve reminder notice.[9] Therefore, Plaintiff requests permission to send a reminder notice (*attached as* **Exhibit 14**) via first-class mail and resending the approved notices via email and text message after the passage of thirty (30) days. *See, e.g., Contreras v. Land Restoration LLC,* 2017 WL 663560, *9 (W.D. Tex. 2017) (permitting reminder notices)*; Frazier*, 285 F. Supp. 3d at 979-80 (permitting reminder notice within the thirty (30) days after the initial mailing).

*     *     *

## PRAYER

Accordingly, Plaintiff respectfully requests this Court to grant the relief set forth above. Plaintiff further requests all such other relief to which he may be justly entitled.

Respectfully submitted,

By: */s/ Drew N. Herrmann*
Drew N. Herrmann
Texas Bar No. 24086523

---

[9]    *See, e.g., Weinstein v. 440 Corp*., No. 2:19-cv-105, 2019 U.S. Dist. LEXIS 190678, at *12 (N.D. Ga. Nov. 4, 2019) (authorizing a reminder notice to restaurant workers); *Florence v. Deli Mgmt.*, No. 1:18-cv-4303, 2019 U.S. Dist. LEXIS 4379, at *9 (N.D. Ga. Jan. 9, 2019) (authorizing reminder notices via mail and e-mail); *Fuentes v. Compadres, Inc.,* 2018 U.S. Dist. LEXIS 78197 (approving additional notice methods due to transient nature of workers at issue).

drew@herrmannlaw.com
Pamela G. Herrmann
Texas Bar No. 24104030
pamela@herrmannlaw.com
**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
Phone: 817-479-9229
Fax: 817-840-5102

-AND-

Jerry Murad, Jr.
Texas Bar No. 00784654
jerrymurad@mac.com
**LAW OFFICE OF JERRY MURAD**
P.O. Box 470067
Fort Worth, Texas 76147
817-335-5691 - telephone
817-870-1162 – fax

ATTORNEYS FOR PLAINTIFF
AND OPT-IN PLAINTIFFS

## CERTIFICATE OF CONFERENCE

I conferred with Counsel for Defendants who stated Defendants are opposed to the relief sought in this motion, *Plaintiffs' Motion for Notice*.

*/s/ Drew N. Herrmann*
Drew N. Herrmann

## CERTIFICATE OF SERVICE

I certify that on June 2, 2022 the above document will be filed via the Court's CM/ECF filing system which will cause a copy to be served on counsel of record for Defendants.

*/s/ Drew N. Herrmann*
Drew N. Herrmann